UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MIROSLAV VESELINOVIC,

Petitioner,

v.

BRUCE SCOTT, et al.,

Respondent.

Case No. 2:26-cv-03008-TLF

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Miroslav Veselinovic has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. Petitioner is currently detained by the U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.*

The petition asks the Court to (1) Issue a Writ of Habeas Corpus ordering respondents to immediately release petitioner from custody, and enjoin respondents from detaining him absent written notice and a hearing before a neutral decisionmaker prior to any such detention; (2) in the alternative, to order respondents to provide petitioner a hearing at which respondents bear the burden of establishing by clear and convincing evidence that petitioner's continued detention is justified; (3) declare that petitioner, a Lawful Permanent Resident (LPR) who was previously released from detention in 2020, has a significant interest in receiving a pre-deprivation hearing that comports with due process, that petitioner, as an LPR, has a heightened liberty interest,

and that petitioner is entitled to a new custody redetermination hearing where he can challenge the Immigration Judge's ("IJ's") constitutionally deficient judgment and where the government bears the burden of proof by clear and convincing evidence; (4) issue a preliminary injunction prohibiting respondents from continuing to detain petitioner pending his underlying removal proceedings and any relevant appeals and adjudication of immigration petitions; (5) issue a permanent injunction barring respondents from refusing to afford petitioner a custody redetermination hearing before a neutral adjudicator in light of his unlawful detention; (6) issue a permanent injunction barring respondents from re-detaining petitioner and revoking his release absent a pre-deprivation hearing where petitioner has notice and opportunity to be heard; (7) issue an order retaining jurisdiction to monitor and enforce compliance with the foregoing injunctions; (8) award reasonable attorney fees and costs; (9) grant such other relief as may be just and reasonable. *Id.*

The Court **GRANTS** the petition in part and **DENIES** the petition in part as follows.

## BACKGROUND

Petitioner is a national and citizen of Croatia who was admitted into the United States as a refugee on November 4, 1998, and on July 17, 2001, petitioner adjusted his status to Lawful Permanent Resident ("LPR") retroactive to November 4, 1998. Dkt. 7 (Decl. of Enrique Rodriguez ("Rodriguez Decl.")), ¶ 3; Dkt. 8 (Decl. of Katherine G. Collins ("Collins Decl.")), Ex. A (2026 Form I-213).

Respondents present evidence that a check of law enforcement databases shows petitioner incurred the following criminal history between 2007 and 2019, which petitioner does not appear to dispute:

a. On July 6, 2007, Washington State Patrol arrested Petitioner for Obstructing a Law Enforcement Officer under RCW 9A.76.020. On July 23, 2007, Spokane District Court found Petitioner guilty.
b. On October 29, 2009, Spokane County Sheriff's Office arrested Petitioner in Spokane, WA, for robbery under RCW 9A.56.200(2). On February 10, 2010, Petitioner was found guilty of Robbery in the Second Degree under RCW 9A.56.210(2).
c. On March 28, 2012, Airway Heights Police Department arrested Petitioner in Spokane, WA, for Theft in the Second Degree under RCW 9A.56.040(2). On May 24, 2013, the charge was dismissed.
d. On June 16, 2012, Washington State Patrol arrested Petitioner for possession of a stolen vehicle, in violation of RCW 9A.56.068, and riot while armed with a deadly weapon, in violation of RCW 9A.84.010(2)(B). On May 15, 2013, Petitioner was found guilty of riot while armed with a deadly weapon, in violation of 9A.84.010(2)(B).
e. On July 26, 2016, Spokane Police Department arrested Petitioner for harassment, threats to kill, in violation of RCW 9A.46.020(2)(B). On April 5, 2017, Petitioner was found guilty of harassment, domestic violence-related, in violation of RCW 9A.46.020(2)(A). Petitioner was sentenced to 364 days in jail, with 354 days suspended, and 2 years of probation.
f. On October 4, 2017, Spokane Police Department arrested Petitioner for unlawful possession of a firearm in the first degree, in violation of RCW 9.41.040(1)(B). On April 19, 2018, the Spokane County Superior Court dismissed the charge.
g. On February 27, 2018, the Spokane County Sheriff's Office arrested Petitioner for possession of a stolen firearm, in violation of RCW 9A.56.310(6); unlawful possession of a firearm in the first degree, in violation of RCW 9.41.040(1)(b); and possession of a controlled substance without a valid prescription, in violation of RCW 69.50.4013(2). On April 18, 2018, Petitioner was found guilty of all charges. Petitioner was sentenced to a victim-related assessment, a fine, and 12 months of community custody.
h. On February 20, 2019, Spokane County Sheriff's Office arrested Petitioner for possession of a stolen firearm, in violation of RCW 9A.56.310(6); unlawful possession of a firearm in the first degree, in violation of RCW 9.41.040(1)(b); and possession of a controlled substance without a valid prescription, in violation of RCW 69.50.4013(2). On May 2, 2019, Petitioner was found guilty of all charges and sentenced to 12 months and one day of imprisonment.
i. On May 9, 2019, Shelton Corrections arrested Petitioner for unlawful possession of a firearm in the second degree, in violation of RCW 9.41.040(2)(c).

Dkt. 7 (Rodriguez Decl.), ¶ 6; Dkt. 8 (Collins Decl.), Ex. A.

On October 15, 2019, petitioner was detained by ICE at Airway Heights Corrections Center where he was being held on charges of Unlawful Firearm

Possession. Dkt. 7 (Rodriguez Decl.), ¶ 7; Dkt. 8 (Collins Decl.), Ex. A. On October 29, 2019, an IJ denied petitioner's request for a custody redetermination finding him subject to mandatory detention under INA 236(c) (8 U.S.C. § 1226(c)). Dkt. 7 (Rodriguez Decl.), ¶ 8. On March 24, 2020, an IJ granted petitioner Cancellation of Removal. *Id.*, ¶ 9.

Respondents present evidence that a check of law enforcement databases show petitioner incurred the following criminal history between 2020 and 2026, which petitioner does not appear to dispute:

a. On October 1, 2020, the Spokane Police Department arrested Petitioner for assault in the first degree, in violation of RCW 9A.36.011(2), with a firearm enhancement. On October 07, 2020, the charge was dismissed.
b. On January 18, 2021, the Spokane Police Department arrested Petitioner for criminal trespass in the second degree, in violation of RCW 9A.52.080(2). On February 9, 2021, the charge was dismissed.
c. On February 3, 2021, the Spokane Police Department arrested Petitioner for burglary in the first degree, in violation of RCW 9A.52.020(2); assault in the fourth degree, in violation of RCW 9A.36.041(2); and malicious mischief in the third degree, in violation of RCW 9A.48.090(2). On June 2, 2021, Petitioner was found guilty of burglary in the second degree, in violation of RCW 9A.52.030(2). Petitioner was sentenced to 19.5 months of imprisonment.
d. On March 21, 2021, the Spokane Police Department arrested Petitioner for violation of a no-contact order, in violation of RCW 26.50.110(1), domestic violence-related. On June 17, 2021, Petitioner was found guilty of violation of a no-contact order in violation of RCW 35/36.00.000.
e. On April 7, 2021, the Spokane Police Department arrested Petitioner for violation of a court order, in violation of RCW 26.50.110. On June 17, 2021, the Spokane Municipal Court dismissed the charge.
f. On June 24, 2021, Petitioner was arrested for burglary in the second degree and booked into the Washington Department of Corrections in Shelton, Washington. The disposition is unknown.
g. On February 21, 2023, the Spokane Police Department arrested Petitioner for assault in the fourth degree, in violation of RCW 9A.36.041(2), domestic violence-related; malicious mischief in the third degree, in violation of RCW 9A.48.090(2); and theft in the third degree, in violation of RCW 9A.56.050(2). Petitioner was found guilty of all charges and sentenced to 364 days in jail and a no-contact order.
h. On September 6, 2023, Petitioner was found guilty of violation of a court order, in violation of RCW 7.105.450(1), domestic violence related. Petitioner was sentenced to 117 days in jail.
i. On May 14, 2023, the Spokane Police Department arrested Petitioner for violation of a protection order, in violation of RCW 7.105.450(4), and assault in the second degree, in violation of RCW 9A.36.021. On September 1, 2023, Petitioner was found guilty of assault in the fourth degree, in violation of RCW 9A.36.041(2), and violation of a

> protection order, in violation of RCW 7.105.450(4). Petitioner was sentenced to 109 days in jail.

Dkt. 7 (Rodriguez Decl.), ¶ 10; Collins Decl., Exh. A.

On January 28, 2026, ICE encountered petitioner in Spokane, Washington and arrested him on an immigration warrant. Dkt. 7 (Rodriguez Decl.) ¶ 11; Dkt. 8 (Collins Decl.), Ex. A; Ex. C (Warrant of Arrest). Petitioner was served with a Notice to Appear ("NTA"), and removal proceedings were initiated against petitioner for the second time. Dkt. 7 (Rodriguez Decl.), ¶¶ 12–13; Dkt. 7 (Collins Decl.), Ex. B (NTA). The NTA states that petitioner was "admitted to the United States, but [is] removable" because he is a native and citizen of Croation admitted as a refugee and adjusted status to that of a lawful permanent resident and on June 17, 2021, petitioner was convicted in the Spokane Municipal Court for the offense of No Contact Order Violation. Dkt. 7 (Collins Decl.), Ex. B (NTA).

The NTA charges petitioner as subject to removal based on "Section 237(a)(2)(E) of the Immigration and Nationality Act, as amended, in that you are an alien who at any time after entry has been enjoined under protection order and has been determined to have engaged in conduct in violation of that order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued." *Id.*

On February 17, 2026, petitioner, through counsel, filed a Motion for Custody Redetermination Hearing, along with supporting documents including a declaration from petitioner, letters of support, and certificates of achievement. Dkt. 7 (Rodriguez Decl.), ¶ 14; Dkt. 8 (Collins Decl.), Ex. D (Bond Record), at 169-244. ICE also filed an evidence packet for consideration by the IJ at the bond hearing, consisting of petitioner's Form I-

213 detailing his immigration and criminal history, as well as petitioner's conviction records for several of his criminal cases, including for violation of the no-contact order in June 2021. Dkt. 8 (Collins Decl.), Ex. D at 3-162.

On February 24, 2026, petitioner appeared with counsel at the Tacoma Immigration Court for a custody redetermination hearing. Dkt. 7 (Rodriguez Decl.), ¶ 14; Dkt. 8 (Collins Decl.), Ex. D at 1. The IJ denied bond via a check-box order finding petitioner both a danger to the community and a flight risk. *Id.* Petitioner did not appeal the bond denial. Dkt. 7 (Rodriguez Decl.), ¶ 14. The parties appear to agree that the bond hearing was not recorded. Dkt. 1 at 15; Dkt. 6 at 6.

On April 2, 2026, the IJ denied petitioner's application for relief and ordered him removed to Croatia. Dkt. 7 (Rodriguez Decl.), ¶ 16. Petitioner appealed his removal order on April 29, 2026, and, as of September 9, 2026, that appeal remains pending. *Id.*, ¶ 17. There is no record of any other motions for custody redetermination submitted by petitioner. *Id.*, ¶ 15.

Petitioner filed the instant petition for writ of habeas corpus on August 25, 2026. Dkt. 1. Respondents filed a response and petitioner filed a reply. Dkts. 6, 10.

**A. Statutory Basis for Detention**

The parties appear to agree that petitioner is subject to discretionary detention under 8 U.S.C § 1226(a), which allows for discretion by officials to release certain detainees pending the outcome of their immigration proceedings.[1] Dkt. 1 at 13; Dkt. 6 at 2-4.

[1] Although petitioner appears to accept 8 U.S.C. § 1226(a) as the statutory basis for his detention, he argues he is entitled to immediate release on Due Process grounds as discussed below.

Under 8 US.C. § 1226(a) the government has the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory. 8 U.S.C. § 1226. When a noncitizen is arrested and taken into immigration custody under § 1226(a), ICE makes an initial custody determination. *See* 8 C.F.R. § 236.1(c)(8). And after the initial custody determination, the detainee may request a bond redetermination by an immigration judge ("IJ"). 8 C.F.R. § 236.1(d)(1).

The Board of Immigration Appeals ("BIA") has held that at the bond redetermination hearing, "the burden is on the [detainee] to show to the satisfaction of the immigration judge that he or she warrants release on bond" *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) "even though section [1226(a)] does not explicitly contain such a requirement." *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). And if the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3)(i). A noncitizen who remains detained following an IJ's initial bond redetermination may request a subsequent bond redetermination if the noncitizen's "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

Regardless of the statutory basis of petitioner's detention, in some circumstances, the Due Process Clause may provide procedural protections not found in the statue. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B. v. Wamsley*, No. 25-cv-1192-KKE, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. Aug. 19, 2025)) ("the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'").

**B. Procedural Due Process**

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . " U.S. Const. amend. V. This right extends to "all persons within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Here, petitioner argues his re-detention violates the Due Process Clause under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See generally* Dkt. 1 at 18-22. The balancing test set forth in *Mathews* applies to initial immigration arrests and detentions, because the Fifth Amendment Due Process Clause protects the liberty interests of noncitizens. *Zadvydas*, 533 U.S. 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent); *see Moncebais v. Bondi*, No. 5:26-CV-268, 2026 WL 1862153 (S.D. Tex. Mar. 27, 2026) (applying the *Mathews* balancing test to a petitioner detained pursuant to 8 U.S.C. § 1225(b)(2) who had lived continuously in the

United States for 32 years and ordering his immediate release.). Accordingly, the Court will consider each *Mathews* factor in turn to determine whether petitioner's arrest and detention comport with constitutional due process requirements.

In evaluating petitioner's due process claim, the Court weighs the *Mathews* factors which include: (1) The private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335; *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context.").

While the U.S. Constitution generally requires some kind of hearing before the State deprives a person of liberty or property, there still may be situations in which a prompt post-deprivation hearing is appropriate. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. July 17, 2025).

1) Private Interest

Under the first *Mathews* factor, the Court determines the private interest that will be affected by the official action.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see*

*also Zadvydas*, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention).

And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. August 19, 2025).

This Court, and other courts in this district have also found that where "the government is aware of a noncitizen's presence in the country without legal status and 'acquiesce[es]' in their continued liberty, 'reliance on [their] freedom create[s] a constitutionally protected liberty interest that cannot be extinguished without due process.'" *Singh v. Mullin*, No. 26-cv-02022-TLF, Dkt. 11 (W.D. Wash. July 14, 2026) (quoting *A.B.J.C. v. Hermosillo*, No. 2:26-CV-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026) (applying *Mathews* and granting release, noting that "having made the decision not to detain petitioners for over a year while petitioners' asylum applications were pending, petitioners have a strong interest in remaining at liberty"); *A.B.J.C.*, 2026 WL 497097 (Granting habeas petitioner's release and finding, under *Mathews*, that where the government released petitioner on an OREC in 2020, affirmatively moved to dismiss his removal proceedings in 2022, and acquiesced in his freedom for six years, petitioner's reliance on his freedom created a constitutionally

protect liberty interest requiring due process consisting of pre-deprivation notice and a hearing before a neutral decisionmaker); *Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507 (W.D. Wash. July 2, 2026) (granting habeas petition and directing release under *Mathews* analysis where petitioner's visa expired and the government did not detain petitioner for over five years thereafter).

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R.*, 791 F. Supp. 3d at 1036 ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

Courts have also held that where a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g.*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where government presented no evidence that "a change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into

its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). On the facts of this case, the Court must determine whether a pre-deprivation hearing is required, or whether respondents may conduct a hearing after an individual in petitioner's situation is initially arrested and detained by ICE, and the timing and nature of such a hearing. *See generally, Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991) (under the Fourth Amendment, a person arrested without a warrant must be brought before a neutral magistrate within 48 hours of arrest (or less, if the person can prove the probable cause determination was delayed unreasonably));[2] *see also Morrissey v. Brewer*, 408 U.S. 471 (1972) (probable cause hearing required after arrest for parole violation, and revocation hearing must take place within a reasonable time); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (holding that petitioner's ATD records indicated numerous violations and ordering a post-deprivation bond hearing

---

[2] The petitioner has not raised a Fourth Amendment issue; the Court therefore is not independently analyzing the arrest and detention under the Fourth Amendment. Yet the liberty interests of a person arrested under an immigration detainer or warrant, analyzed under the Fifth Amendment due process factors of *Matthews*, are similar to the liberty interests recognized in *Gerstein v. Pugh,* 420 U.S. 103 (1975). *See Kakkar v. Chestnut,* 1:25-CV-1627 JLT SAB, 2025 WL 3638298 (E.D. Cal. Dec. 15, 2025) (person recently released from prison would not have the same weighty significant private interest under *Mathews* as a person who had been successfully compliant with conditional release for a lengthy period before re-arrest on immigration matter).

within 10 days of court order); *Donahue v. Rhode Island Dept. of Mental Health,* 632 F. Supp. 1456, 1463 (D. R.I. 1986) (In considering a due process challenge to Rhode Island's involuntary civil commitment statute that required a post-deprivation hearing within 10 days after a person was arrested for being an alcoholic the Court concluded that "[i]t is settled that the hearing which determines the constitutionality of the confinement need not take place before the deprivation occurs."); *Luna v. Van Zandt*, 554 F. Supp. 68, 72 (S.D. Tex. 1982) (holding due process required a probable cause hearing within seventy-two hours of deprivation).

Here, petitioner is a Lawful Permanent Resident ("LPR") and has been present in the country since 1998. Petitioner was not subject to a conditional order of release at the time of his detention. He was granted Cancellation of Removal in his first removal proceedings in 2020, although it is unclear whether the cancellation reflects an assessment that petitioner was not a danger or a flight risk. Petitioner has been detained and deprived of an established interest in his liberty. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–21 ("Petitioner was arrested in public, detained and transferred to a facility in a different state, and remains in custody today undoubtedly deprives him of an established interest in his liberty.").

Petitioner argues his status as a LPR increases his liberty interest such that he was entitled to pre-deprivation notice and a hearing prior to his detention. But even if the Court assumes petitioner's status as a LPR increases his liberty interest, and even if his Cancellation of Removal in 2020 could be interpreted to imply that petitioner was found not to be a danger or flight risk, petitioner does not dispute that subsequent to being granted Cancellation of Removal in 2020, he incurred several new criminal charges and

several convictions including for burglary, violation of a no-contact order, domestic violence related, and violation of a protection order.

The record also reflects that a domestic violence no-contact order remains in effect. Dkt. 9 at 18 (domestic violence no-contact order dated Feb. 4, 2021). Thus, there is a showing of materially changed circumstances between the granting of Cancellation of Removal in 2020 and petitioner's detention in January 2026. And petitioner's convictions, particularly related to violation of a no-contact order and protection order, are indicative of dangerousness to the community.

Therefore, although the first *Mathews* factor weighs in petitioner's favor, the individual interest is significantly diminished by his significant criminal history – relevant to the assessment of dangerousness and flight risk -- incurred since being granted Cancellation of Removal in 2020.

2) Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

As discussed above, petitioner has a liberty interest in that he is a LPR and has been present in the country since 1998. The risk of erroneous deprivation of petitioner's liberty interest in the absence of any hearing would be high. But petitioner's significant criminal history incurred since receiving Cancellation of Removal in 2020, including the conviction for violating a no-contact order which is the basis for his removal charges, constitutes a material change in circumstances and given the nature of the crimes, could very reasonably be seen as presenting circumstance requiring arrest and re-

detention before a hearing. Under these circumstances, the Court finds a post-deprivation hearing is consistent with due process. And here, given the undisputed evidence of significant criminal history, including violations of a no-contact order and protection order, the Court finds that placing the burden on the petitioner to show that he is not a danger or a flight risk at such a hearing is consistent with due process.

And here, petitioner did receive a bond hearing under 8 U.S.C. § 1226(a), where the burden was on the petitioner.

Petitioner also challenges the bond hearing he received as violating due process arguing the IJ abused her discretion in denying him bond. Dkt. 1 at 15-16. Petitioner argues that because there is no contemporaneous record made of the hearing and the IJ issued only a check-box order without any reasoning finding flight risk and dangerousness, she failed to properly apply the *Guerra* factors to the record evidence. Dkt. 1 at 15-16l; *In re Guerra*, 24 I. & N. Dec. 37, 40.

Respondents argue the petition should be denied because petitioner has not exhausted his administrative remedies because he has not appealed to the BIA, and further that the bond hearing and decision comported with due process. Dkt. 6.

In the context of habeas review under 28 U.S.C. § 2241, exhaustion of administrative remedies, "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need

for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted).

Nevertheless, even where these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal citation and quotation marks omitted).

Here, with respect to the first factor, "[p]etitioner here raises a constitutional challenge to the adequacy of his bond hearing, which is better suited to review by the federal courts." *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Scott v. Wamsley*, No. 2:25-CV-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, No. 2:25-CV-1819, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026) (finding that due process and statutory challenge to continued detention is "fundamentally a question of law")). Furthermore, as no contemporaneous record was made of the hearing itself, it is not clear to the Court whether requiring petitioner to exhaust his remedies would be sufficient to generate a proper record. The first *Puga* factor weighs against requiring prudential exhaustion.

With respect to the second factor, although relaxation of prudential exhaustion may, to some extent, encourage others to bypass the administrative appellate procedures, the petitioner raises constitutional challenges to the IJ's denial of bond, arguing the IJ failed to apply the *Guerra* factors to the record evidence. A decision would likely "be beneficial to provide the specific immigration court, which regularly

handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026). Accordingly, this factor weighs neutral. *Id.*

Turning to the third factor, "the defect[s] alleged by Petitioner [are] constitutional in nature, and it is unlikely that appeal to the BIA will permit the agency to correct a factual or evidentiary oversight by the IJ." *W.T.M.*, 2026 WL 262583, at *3. The third *Puga* factor weighs against requiring prudential exhaustion.

Petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile." *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) (citing *Matter of Cruz de Ortiz*, 25 I. & N. Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we administer."); *see also Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 238 (W.D.N.Y. Jan. 16, 2019) (waiving exhaustion requirement because "the BIA does not have jurisdiction to adjudicate constitutional issues")).

The Court finds petitioner is not required to exhaust his administrative remedies prior to pursuing this action.

Yet this case presents similar facts to those presented in *Lei v. Bostock*, No. 2:26-CV-01664-TMC, 2026 WL 1745806 (W.D. Wash. June 17, 2026). Namely, "[p]etitioner asks the Court to review a record that presents just one side of the flight risk/danger issue because there is no contemporaneous record of the IJ's reasons for

[the] decision."[3] *Id.* at *3. The Court agrees with and adopts the reasoning of the Court in *Lei*. *Id.*

The Court further finds, as did the Court in *Lei*, that "without a contemporaneous record of the IJ's bond hearing, this Court cannot assess whether the IJ abused [their] discretion by denying bond." *Id.* And under these circumstances, the Court concludes that due process requires that petitioner be granted a new bond hearing under § 1226(a). *Id.* The bond hearing must focus on petitioner's eligibility for bond under § 1226(a), and there must also be a contemporaneous record, by audio recording or transcript, made by the immigration court of the bond hearing. *Id.*

For the reasons discussed above, the second factor weighs in petitioner's favor only to the extent that he should receive another bond hearing under § 1226(a), with a contemporaneous record, where he has the burden to show he is not a flight risk or a danger to the community.

3) Government's Interest

Under the final *Mathews* factors, the Court considers the government's interest in arresting and detaining petitioner without a hearing.

The government has an obvious interest in "protecting the public from dangerous criminal [noncitizens].'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 515 (2003)). Yet even when the government conducts a warrantless arrest for criminal charges, an individual is entitled to notice of the criminal charges at an initial appearance within 48 hours of being arrested, and the government must provide a

[3] The Court notes that in this case, as in *Lei*, there is also evidence of criminal history. *Lei*, 2026 WL 1745806 at *3.

detention or release hearing before the individual is committed for pretrial detention. *See Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991); *Gerstein*, 420 U.S. at 112 (a determination of probable cause must be decided by a neutral and detached magistrate as soon as possible after a warrantless arrest); 18 U.S.C. § 3142; *see also, Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 823-826 (9th Cir. 2020).

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore,* 538 U.S. at 518). "The Supreme Court has … instructed that in a *Mathews* analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id*. (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Here, providing another hearing under § 1226(a) before an immigration judge would require the government to bear the administrative costs of due process, but those costs are outweighed by the deprivation of liberty at stake. The respondents' interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so *without a hearing* is low.") (emphasis added).

The third *Mathews* factor weighs in petitioner's favor only to the extent that he should be granted a new bond hearing under § 1226(a), with a contemporaneous record, where he has the burden to show he is not a flight risk or a danger to the community.

Based on this review of the *Mathews* factors, the Court finds granting a new bond hearing under § 1226(a), with a contemporaneous record, where petitioner bears the burden to show he is not a flight risk or a danger to the community would be consistent with due process.

**C. Substantive Due Process**

Petitioner also argues that his continued detention violates substantive due process. Dkt. 1 at 17-18. He argues, "[p]etitioner, an LPR, has been subjected to unlawful, lengthy detention for nearly eight months. Petitioner's continued detention without any substantive hearing before a neutral adjudicator renders such detention arbitrary and excessive in relation to any legitimate governmental purpose. Absent any mechanism to evaluate whether continued detention is justified, the deprivation of liberty lacks the constitutional safeguards required by the Fifth Amendment." *Id.*

Here, petitioner received a bond hearing under § 1226(a) in February 2026, and the Court has directed that a new bond hearing under § 1226(a) be held with a contemporaneous record. Petitioner cites to no case, nor is the Court aware of any, finding that continued detention under the circumstances of petitioner's case, separately violates petitioner's substantive due process rights.

Accordingly, petitioner's substantive due process claim is denied.

**CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus is GRANTED in part as follows:

   a. Within fourteen days of this order, respondents must either release petitioner or provide him a bond hearing under 8 U.S.C. § 1226(a).

b. Respondents must create a contemporaneous record, by audio recording or transcript, of any subsequent bond hearing for petitioner.

c. If petitioner is released, respondents must return to him any personal property, including any personal identification document (other than a passport) and any employment authorization document.

d. Nothing in this order prevents an Immigration Judge from granting a request by petitioner for a continuance in his bond proceedings.

(2) The petition for writ of habeas corpus (Dkt. 1) is DENIED with respect to petitioner's remaining claims including his request for immediate release and any remaining claims for declaratory or injunctive relief.

(3) The Court will consider an appropriate post-judgment motion for attorney's fees as requested in the petition.

(4) The Clerk shall provide a copy of this order to counsel for petitioner and counsel for respondents.

Dated this 24th day of September, 2026.

Theresa L. Fricke

Theresa L. Fricke
United States Magistrate Judge